UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AREEJ AL-SADHAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>TWITTER INC., et al.,<br><br>    Defendants. | Case No. 23-cv-02369-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SERVICE BY ALTERNATIVE MEANS**<br><br>Docket No. 75 |

Currently pending before the Court is Plaintiffs' motion for service by alternative means. Specifically, Plaintiffs ask for leave to serve four individual defendants (Ahmad Abouammo, Saud Al-Qahtani, Ali Alzabarah, Ahmed Almutairi, and Bader Al-Asaker) by means such as service on U.S.-based counsel and service on the embassy for the Kingdom of Saudi Arabia ("KSA"). Having considered Plaintiffs' motion and supporting papers, the Court hereby **GRANTS** in part and **DENIES** in part the request for relief.

## I.  DISCUSSION

A.  Federal Rule of Civil Procedure 4(f)

The four individual defendants all reside in the KSA. Federal Rule of Civil Procedure 4(f) addresses service of an individual in a foreign country. It provides as follows:

> Serving an Individual in a Foreign Country. Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial

       and Extrajudicial Documents;

(2)  if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

 (A)  as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
 (B)  as the foreign authority directs in response to a letter rogatory or letter of request; or
 (C)  unless prohibited by the foreign country's law, by:
  (i)  delivering a copy of the summons and of the complaint to the individual personally; or
  (ii)  using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3)  by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

  In the instant case, Plaintiffs are invoking Rule 4(f)(3). The Ninth Circuit has held that Rule 4(f)(3) simply requires that service by ordered by a court and that service not be prohibited by an international agreement. "No other limitations are evident from the text. In fact, as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002).

  In the same case, the Ninth Circuit rejected the proposition that Rule 4(f) "create[s] a hierarchy of preferred methods of service," *i.e.*, requiring an attempt at service by the means identified in Rule 4(f)(1) and (2) before a party can ask for alternative relief under (3). *Id.* at 1014. "No such requirement is found in the Rule's text, implied by its structure, or even hinted at in the advisory committee notes." *Id.*; *see also id.* at 1015 (stating that "service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief'"). A district court has discretion to determine "when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)." *Id.* at 1016.

  Finally, the Ninth Circuit has indicated that service under Rule 4(f)(3) can be accomplished by nontraditional means: "trial courts have authorized a wide variety of alternative methods of

service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email." *Id. See, e.g.*, *id.* at 1018 (noting that "we leave it to the discretion of the district court to balance the limitations of email service against its benefits in any particular case"). That being said, service authorized under Rule 4(f)(3) must still comport with due process. "To meet this requirement, the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 1017.

B.   Service of Process in the KSA

Although Rule 4(f) does not create a hierarchy of preferred methods of service, Plaintiffs have explained why they are seeking service pursuant to Rule 4(f)(3). For example, the KSA is not a party to the Hague Convention. Plaintiffs also assert that the KSA does not accept letters rogatory. Although Plaintiffs do not provide authority to support that assertion, using the letter rogatory process would likely be time consuming. *See Oueiss v. Mohammed Bin Salman Bin Abdulaziz Al Saud*, No. 1:20-cv-25022-KMM, 2021 U.S. Dist. LEXIS 217068, at *20 (S.D. Fla. Jan. 17, 2021) (crediting attorney declaration that "'service via Letters Rogatory would be very time consuming and could potentially take over a year . . . [and] Plaintiff would incur a charge of approximately $6,000.00' from the process server retained by Counsel's firm[;] [t]he time-consuming nature of Letters Rogatory is supported by United States Department of State publications attached to the Declaration"). Finally, Plaintiffs submitted evidence that they contacted two different international service providers regarding service on the individual defendants, but the providers essentially declined for safety reasons. *See generally* Larson Decl.

Based on the above, Plaintiffs have established that they have a factual basis for their request under Rule 4(f)(3).

C.   Service on Mr. Almutairi

Plaintiffs ask for permission to serve Mr. Almutairi by: (1) substitute service on the KSA Ambassador in Washington, D.C. and (2) certified mail at the KSA Embassy in Washington, D.C. Based on the record submitted, the Court denies the request for service by these means. Plaintiffs

3

have failed to establish that service by such means meets due process. There is no allegation or concrete evidence that Mr. Almutairi is a KSA government employee, let alone one of such significance that notice to the KSA Ambassador or Embassy would likely be conveyed to Mr. Almutairi. Although Plaintiffs allege that the individual defendants worked in conjunction with the KSA to violate their rights, *see, e.g.*, FAC ¶¶ 18-19 (alleging that Mr. Almutairi and Mr. Al-Asaker were charged by federal indictment as acting as agents of KSA), that is only an allegation.

D.  Service on Mr. Al-Qahtani

Plaintiffs propose that Mr. Al-Qahtani be served via the KSA Ambassador and Embassy, plus his U.S.-based counsel (representing him in different litigation).

"[S]everal courts have permitted foreign defendants to be served under Rule 4(f)(3) by substituted service on a domestic attorney for the defendant." Moore's Fed. Prac. – Civ. § 4.52. This has happened even when the attorney has not been authorized to accept service of process, or when the attorney is representing the defendant in a different litigation. *See, e.g.*:

- *Compania De Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1295 (10th Cir. 2020) (indicating that service on U.S. counsel is permissible under Rule 4(f)(3) even though counsel is in the U.S. and not abroad; counsel is simply a conduit and, "'ultimately, the foreign individual is served and thereby provided notice outside a United States judicial district, in accordance with Rule 4's plain language'");
- *Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries OPEC*, 766 F.3d 74, 83 (D.C. Cir. 2014) (noting that "[a] number of courts . . . have sanctioned service on United States counsel as an alternative means of service under Rule 4(f)(3) without requiring any specific authorization by the defendant for the recipient to accept service on its behalf");
- *Rio Props.*, 284 F.3d at 1013, 1017 (noting "[s]ervice upon [the U.S. attorney] was . . . appropriate [even though he had declined to accept service] because he had been specifically consulted by [defendant] regarding this lawsuit[;] [h]e knew of [defendant's] legal positions, and it seems clear that he was in contact with

[defendant] in Costa Rica," and therefore service on the attorney was "reasonably calculated in these circumstances to apprise [defendant] of the pendency of the present action");

- *Nader Turiu Aldossari v. Ripp*, 2021 U.S. Dist. LEXIS 13684, at *5-6 (E.D. Penn. Jan. 26, 2021) (allowing for service by email and certified mail on the Crown Prince's U.S. counsel; "[c]ounsel is in communication with the client – albeit for a different civil case – and will know how to locate the Crown Prince to make him aware of this suit");

- *Oueiss*, 2021 U.S. Dist. LEXIS 217068, at *9, 24 (allowing for "service via Hand-Delivery on [Crown Prince's] current U.S.-based counsel" representing him in a D.C. lawsuit).

In light of the authorities above, the Court gives Plaintiffs leave to serve Mr. Al-Qahtani via his U.S. counsel. Service on U.S. counsel shall be effected via hand delivery, email, and certified mail.

The Court also orders Plaintiffs to further serve Mr. Al-Qahtani through: (1) substitute service on the KSA Ambassador in Washington, D.C. and (2) certified mail at the KSA Embassy in Washington, D.C. The Court acknowledges that there is no concrete evidence that Mr. Al-Qahtani is a KSA employee, let alone a high-level KSA employee. *See*, *e.g.*, FAC ¶ 16 (alleging that Mr. Al-Qahtani is a "trusted adviser" to the Crown Prince and "was considered his enforcer"); Larson Decl. ¶ 4 (testifying that one international service provider characterized the individual defendants as "high profile"). If this were the only means of service proposed by Plaintiffs, the Court would not approve service because of due process concerns (consistent with the discussion related to Mr. Almutairi above). However, as this service would simply serve as a supplement to proper service, and would potentially enhance the likelihood of Mr. Al-Qahtani getting actual notice of this suit, the Court deems it warranted.

Accordingly, the Court grants the request for service by alternative means on Mr. Al-Qahtani, as outlined above.

E.  **Service on Mr. Alzabarah**

For Mr. Alzabarah, Plaintiffs propose (1) service on the U.S.-based counsel for the MiSK Foundation, his last known place of business, and (2) email service on the MiSK Foundation (specifically, contact@misk.org and info@misk.org). In the FAC, Plaintiffs allege that, "after fleeing the United States, [Mr. Alzabarah] received a lucrative position at the MISK Foundation." FAC ¶ 76. Plaintiffs also allege that MiSK is the Crown Prince's "personal multi-billion-dollar foundation operating under his control and direction" and engages in "cultural 'programming' in Saudi Arabia and abroad," *e.g.*, "funding and organizing student events across U.S. school campuses." FAC ¶ 20.

The Court denies Plaintiffs' motion with respect to Mr. Alzabarah. Plaintiffs have failed to show that service by the means identified satisfies due process. To be sure, Plaintiffs have alleged that Mr. Alzabarah is an employee of the MiSK Foundation. But it is not clear that he is a significant enough employee such that service on MiSK would likely lead to his getting notified about this suit. Although he allegedly has a "lucrative position," it is not entirely clear what that means. Also, there is no indication that Mr. Alzabarah is the individual who gets emails at contact@misk.org and info@misk.org. *Compare, e.g.*, *Microsoft Corp. v. Buy More, Inc.*, 703 Fed. Appx. 476, 480 (9th Cir. 2017) ("The district court permitted Microsoft to serve Sajjad through email at admin@sidemicro.com . . . . Sajjad had access to that email account, as Side Micro, Inc.'s RRP account information identified Sajjad as the user associated with that email account.").

F.  **Service on Mr. Al-Asaker**

For Mr. Al-Asaker, Plaintiffs propose: (1) service on his U.S.-based counsel (representing him in different litigation); (2) service on the U.S.-based counsel for the MiSK Foundation, his last known place of business; (3) email service on the MiSK Foundation; and (4) service on the KSA Ambassador and Embassy.

The Court shall allow service on the U.S. counsel (by hand delivery, email, and certified mail) for the reasons stated above in Part I.D, *supra*. The Court also orders Plaintiffs to supplement this service with service via the means identified in (2)-(4) above. Supplemental

service as described in (2) and (3) may be of benefit given allegations that Mr. Al-Asaker is MiSK's Secretary General, *see* FAC ¶ 20 – *i.e.*, a person of significance within the organization. Although there is no indication that Mr. Al-Qahtani is a KSA employee or one of significance, service via the means in (4) (*i.e.*, substitute service on the KSA Ambassador in Washington, D.C. and certified mail at the KSA Embassy in Washington, D.C.) will not be any additional burden on Plaintiffs given that they will already be serving Mr. Al-Qahtani through this means.

## II. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' motion. Plaintiffs have leave to serve Mr. Al-Qahtani and Mr. Al-Asaker in compliance with this order. The Court denies the motion as to Mr. Almutairi and Mr. Alzabarah, but without prejudice.

This order disposes of Docket No. 75.

**IT IS SO ORDERED**.

Dated: June 14, 2024

_____
EDWARD M. CHEN
United States District Judge