Ahmad Abouammo, No. 49536-086
Federal Correctional Institution Lompoc I
3600 Guard Road
Lompoc, CA 93436

Defendant In Pro Per



FILED

OCT 0 3 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| AREEJ AL-SADHAN, et al. <br>     Plaintiffs, <br><br><br><br><br><br><br><br><br><br><br> vs. <br><br> TWITTER. INC. et al.. <br>     Defendants. | Case No.: 3:23-cv-02369-EMC <br><br> DEFENDANT AHMAD ABOUAMMO'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT: MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF: AND <br> 1. REQUEST THAT THE COURT SET THE HEARING DATE AND BRIEFING SCHEDULE: AND <br> 2. NOTICE THAT DEFENDANT AHMAD ABOUAMMO IS NOT ABLE TO APPEAR FOR THE HEARING <br><br> Date: To Be Determined <br> Time: To Be Determined <br> Dept.: Courtroom 5 - 17th Floor. <br> Judge: Hon. Edward M. Chen <br><br> Date Filed: May 16, 2023 <br> Trial Date: Not Yet Set <br><br> (Filed Concurrently with Request for Judicial Notice) |

## NOTION OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND TO THEIR COUNSEL

PLEASE TAKE NOTICE that on the date scheduled by the Court, at the time scheduled by the Court, in Courtroom 5, 17th Floor, of the United States District Courthouse in San Francisco, California, that Defendant Abouammo will move the Court to Dismiss said Defendant as to the pending First Amended Complaint, or any other pending complaint in this action.

-1-

DEFENDANT AHMAD ABOUAMMO'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

## Request for Court to schedule hearing date and briefing schedule, subject to the following:

Movant is not able to schedule a hearing date as he does not have access to obtain such a date.  It is requested that the Court set a hearing date subject to the following, and set forth a briefing schedule taking into consideration the following:

1.  Movant requests that Movant have at least 40 days after service of the Opposition, to file a Reply.  The reason for this is that mail to and from Lompoc Federal Correction Institution is very slow, and Movant has only limited access to the law library.

2.  If the Court will notify Movant of the scheduled dates, Movant will give proper notice.

THE MOTION:  The Motion is made pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the court lacks jurisdiction, the First Amended Complaint fails to allege a viable claim against Movant, and the claims of Plaintiffs have been discharged in bankruptcy.

THE ISSUES:  The issues presented by the Motion to Dismiss are as follows:

1.  Whether Plaintiffs have Article III standing to bring their claims; and

2.  Whether the claims are such that relief can be granted under Rule 12(b)(6); and

3.  That the claims of Plaintiffs have been discharged in bankruptcy by Movant.

### MEMORANDUM OF POINTS AND AUTHORITIES

**1.   INTRODUCTION**

The claims against Defendant Ahmad Abouammo (sometimes referred to as "Movant" arise by the claim that Movant provided information about one of the Plaintiffs to the government of the Kingdom of Saudi Arabia ("KSA"), and that

DEFENDANT AHMAD ABOUAMMO'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

ss a result of that information, KSA was able to locate and arrest Plaintiff Abkulrahman Al-Sadhan.  Plaintiff Areej Al-Sadhan is his sister, and she makes claim that agents of KSA have harrassed her.

The actions committed by Movant, as alleged in the First Amended Complaint ("FAC") took place in 2014 and 2015.  The lawsuit arises about eight (8) years after those claimed actions.

Movant asserts that the action should be dismissed for reasons that include the following:

1.  Movant filed a Chapter 7 Bankruptcy case in 2019, and received a discharge.  That discharge would have discharged any claims; and

2.  Plaintiffs lack Article III standing to assert their claims; and

3.  The claims should be dismissed pursuant to Rule 12(b)(6); and

4.  Defendant Twitter, Inc., filed a Motion to Dismiss the FAC, in this action and that Motion was grnated.  The FAC should be dismissed as to Movant for reasons set forth in that Motion by Defendant Twitter, Inc.; and

5.  The FAC fails to establish a causal connection between the alleged unauthorized access to Mr. Al-Shadhan's account information in 2014 and 2015 and the harm each Plaintiff alleges to have suffered years later.

**2.    INCORPORATION OF MOTION TO DISMISS BY DEFENDANT TWITTER, INC.**

Movant references the Motion to Dismiss the First Amended Complaint filed by defendant Twitter, Inc., in this action on 09/29/2023 (Document 45), and incorporates the content of that Motion as if set forth herein.  A copy of that Motion is attached hereto as Exhibit "A" for the convenience of the Court.

Additionally, portions of the Twitter Motion to Dismiss are referenced and incorporated and referenced as to certain issues referenced below.

DEFENDANT AHMAD ABOUAMMO'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST AMENDED COMPLAINT

**3.    PLAINTIFFS FAIL TO ESTABLISH ARTICLE III STANDING TO PURSUE CLAIMS AGAINST MOVANT**

Movant refers to and incorporates the portion of the Motion to Dismiss by Defendant Twitter, Inc. ("Twitter Motion") beginning at Page 6, Line 15, as if set forth herein.

Clearly, Plaintiffs have failed to demonstrate a "causal connection between the injury and the conduct complained of", and "the injury has to be fairly traceable to the challenged actions of the defendant". Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992).  Plaintiff's claims also fail as the "line of causation between the (alleged) illegal conduct and injury" must not be "too attenuated". Allen v. Wright, 468 U.S. 737, 752 (1984).  Here, the alleged actions of Movant, as a defendant, did not cause the alleged actions performed by KSA, and the resulting claimed damages.

**4.    MS. AL-SADHAN LACKS ARTICLE III STANDING TO SUE DEFENDNAT ABOUAMMO BECAUSE THE KSA, NOT ABOUAMMO, IS RESPONSIBLE FOR STALKING AND HARISSING HER.**

Movant refers to and incorporates the portion of the Motion to Dismiss by Defendnat Twitter, Inc. beginning at Page 8, Line 1.

The claimed harms suffered by Ms. Al-Sadhan were caused by KSA, not by Movant.  There is no causal connection between the claimed acts of Movant, and those of KSA.

**5.    PLAINTIF'S CLAIMS SHOULD BE DISMISSED BECAUSE OF THE LACK OF CAUSATION PROXIMATELY CAUSED BY MOVANT.**

Movant refers to and incorporates the portion of the Twitter Motion beginning at Page 8, Line 23.

Plaintiffs have failed to set forth in the FAC the required level of causation to create liability of Movant, as to the claimed injuries resulting from the harassment by KSA.  As a result, the FAC as to Movant should be dismissed.

-4-

6. **PLAINTIFF'S RICO CLAIMS FOR ADDITIONAL REASONS.**

Movant refers to and incorporates the portion of the Twitter Motion beginning at Page 11, Line 1.

The Claims against Movant based on RICO are untimely, as set forth in the Twitter Motion at Page 11, Line 6.

Additionally, for all of the reasons set forth in the Twitter Motion, the RICO claims should be dismissed.

7. **MR. AL-SADHAN'S ALIEN TORT STATUTE CLAIMS FAIL TO ALLEGE A VIABLE CLAIM AGAINST MOVANT.**

Movant refers to and incorporates the portion of the Twitter Motion beginning at Page 23, Line 10.

The claims that Movant aided and abetted in the torture of Plaintiff Mr. Al-Shadhan are unsupported by any well-placed facts, and fail for all of the reasons set forth in the Twitter Motion.  Additionally, the Alien Tort Statute cannot be applied extraterritorially, as set forth in the Twitter Motion beginning at Page 25, Line 3.

8. **PORTIONS OF THE TWITTER MOTION APPLY TO BOTH TWITTER, INC. AND MOVANT.**

The referenced portions of the Twitter Motion that discuss how the portions of the FAC do not apply to Twitter, Inc., likewise do not apply to Movant.  The referenced portions of the Twitter Motion should be read in that light, that as they do not apply to Twitter, the claims in the FAC, they also do not apply to Movant, notwithstanding the fact that the Twitter Motion only references Twitter.

9. **MOVANT'S CLAIMED ACTIONS WERE NOT THE CAUSE OF THE ARREST AND CLAIMED TORTURE OF MR. AL-SADHAN, NOR THE CLAIMED HARASSMENT OF MS. AL-SADHAN.**

The FAC alleges that Movant provided information about Mr. Al-Sadhan relating to his Twitter account, which resulted in the arrest and torture of Mr. Al-Sadhan.  Mr. Al-Sadhan was arrested for violating the laws of KSA, and was

DEFENDANT AHMAD ABOUAMMO'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST AMENDED COMPLAINT

tried and convicted of such violations.  The FAC fails to allege that any action by Movant caused Mr. Al-Sadhan to violate such laws of KSA.  Nor does it allege that Movant caused the harassment of Ms. Al-Sadhan by KSA.  The lack of causation requires dismissal of the FAC as to Movant.

**10.   ALL OF PLAINTIFF'S CLAIMS AGAINST DEFENDANT ABOUAMMO HAVE BEEN DISCHARGED BY REASON OF HIS BANKRUPTCY DISCHARGE.**

Defendant Ahmad Abouammo filed Chapter 7 Bankruptcy on August 26, 2019, four to five years after the alleged actions complained of by Movant.

Movant obtained a Discharge in said Bankruptcy case on December 4, 2019. A copy of said Bankruptcy Discharge was issued in Bankruptcy case number 19-13162-TWD in the Western District of Washington, is attached to the Request For Judicial Notice, filed concurrently with the Motion to Dismiss.

As a result of said bankruptcy discharge, the claims of Plaintiffs against defendant Abouammo are no longer viable, and the FAC as to Movant should be dismissed.

**11.   CONCLUSION**

**The FAC was dismissed as to TWITTER, Inc.** as the Twitter Demurrer was sustained without leave to further amend the FAC.  The same relief should be granted to defendant Ahmad Abouammo for all of the reasons set forth above, and all of the reasons set forth in the Twitter Motion.

The Bankruptcy Discharge referenced above, in and of itself, is sufficient enough for such dismissal to be granted as to Movant.

Dated:  September 26, 2024                    Respectfully submitted,

Ahmad Abouammo
Defendant In Pro Per

DEFENDANT AHMAD ABOUAMMO'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST AMENDED COMPLAINT

# EXHIBIT
## "A"

Case 3:23-cv-02369-EMC   Document 45   Filed 09/29/23   Page 1 of 35

KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
ANJALI SRINIVASAN - # 304413
asrinivasan@keker.com
W. HAMILTON JORDAN - # 295004
wjordan@keker.com
RYLEE KERCHER OLM - # 318550
rolm@keker.com
RYAN J. HAYWARD - # 330924
rhayward@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant X Corp.,
as Successor in Interest to Named
Defendant Twitter, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| AREEJ AL-SADHAN, and ABDULRAHMAN AL-SADHAN, an Incompetent, by his Sister and Next Friend AREEJ AL-SADHAN, <br><br> Plaintiffs, <br><br> v. <br><br> TWITTER, INC., KINGDOM OF SAUDI ARABIA, SAUD AL-QAHTANI, AHMAD ABOUAMMO, ALI ALZABARAH, AHMED ALMUTAIRI a/k/a AHMED ALJBREEN, BADER AL-ASAKER, SAUDI ARABIAN CULTURAL MISSION, and JOHN DOES 1-10, <br><br> Defendants. | Case No. 3:23-cv-02369-EMC <br><br> **DEFENDANT X CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:        December 21, 2023 <br> Time:        1:30 p.m. <br> Dept.:        Courtroom 5 – 17th Floor <br> Judge:        Hon. Edward M. Chen <br><br> Date Filed: May 16, 2023 <br> Trial Date:  Not Yet Set |

DEFENDANT X CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:23-cv-02369-EMC

2358565

1

## TABLE OF CONTENTS

2
**Page**

3   I.   INTRODUCTION ............................................................................................................. 1

4   II.  BACKGROUND .............................................................................................................. 3

5        A.   Mr. Al-Sadhan joins Twitter and builds a "substantial" following for his
              public criticism of the KSA and Saudi royal family. .............................................. 3
6
         B.   Ahmad Abouammo and Ali Alzabarah engage in espionage against Twitter
7             and its accountholders on behalf of the KSA. ......................................................... 3

8        C.   Twitter notifies individuals whose accounts may have been compromised. ........... 4

9        D.   In March 2018, the KSA allegedly kidnaps Mr. Al-Sadhan. ................................... 4

10       E.   Ms. Al-Sadhan publicly criticizes the KSA over its treatment of her brother. ....... 5

11       F.   Ms. Al-Sadhan brings this suit on behalf of herself and her brother...................... 5

12       G.   Procedural History ................................................................................................... 5

13  III. ARGUMENT ................................................................................................................... 6

14       A.   Plaintiffs fail to establish Article III standing to pursue claims against
              Twitter related to the alleged 2014–2015 data breach. ........................................... 6
15
              1.   Mr. Al-Sadhan lacks Article III standing to sue Twitter because the
16                 KSA, not Twitter, caused his arrest, torture, and detention. .......................... 7

17            2.   Ms. Al-Sadhan lacks Article III standing to sue Twitter because the
                   KSA, not Twitter, is responsible for stalking and harassing her. .................. 8
18
         B.   Plaintiffs' claims also should be dismissed for lack of proximate causation. ......... 8
19
         C.   As the district court held in *Abdulaziz*, Twitter did not authorize or ratify
20            Abouammo's and Alzabarah's rogue actions and is not liable for them................... 9

21       D.   Plaintiffs' RICO claims fail for several additional reasons................................... 11

22            1.   Plaintiffs' RICO claims against Twitter are untimely.............................. 11

23            2.   Plaintiffs fail to plead adequate facts to support their RICO claims. ........ 13

24       E.   Mr. Al-Sadhan's ATS claim fails for several additional reasons.......................... 23

25            1.   Mr. Al-Sadhan fails to plead facts sufficient to establish that Twitter
                   conspired to, or aided and abetted, his torture........................................... 23
26
              2.   Conspiracy and criminal enterprise liability for torture have not been
27                 recognized as cognizable under the ATS. ................................................... 24

28            3.   The FAC improperly seeks to apply the ATS extraterritorially............... 25

i

2358565

1

IV.     CONCLUSION ........................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT X CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:23-cv-02369-EMC

2358565

1

2

## TABLE OF AUTHORITIES

3

Page(s)

4

**Federal Cases**

5

*Abcarian v. Levine,*
   972 F.3d 1019 (9th Cir. 2020) ....................................................................... 13, 17

6

*Abdulaziz v. Twitter, Inc.,*
   2020 WL 6947929 (Aug. 12, 2020) ("*Abdulaziz I*") ........................................*passim*

7

8

*Abdulaziz v. Twitter, Inc.,*
   2021 WL 2986400 (N.D. Cal. July 15, 2021) ("*Abdulaziz III*") ........................ 6, 7, 9

9

10

*Abdulaziz v. Twitter, Inc.,*
   2021 WL 633812 (Feb. 18, 2021) ("*Abdulaziz II*") ...................................... 6, 7, 8, 12

11

*Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,*
   483 U.S. 143 (1987) ............................................................................................. 11

12

13

*Ainsworth v. Owenby,*
   326 F. Supp. 3d 1111 (D. Or. 2018) ..................................................................... 19

14

15

*Al-Ahmed v. Twitter, Inc.,*
   2023 WL 27356 (N.D. Cal. Jan. 3, 2023) ("*Al-Ahmed II*") ...................... 6, 12, 23

16

*Al-Ahmed v. Twitter, Inc.,*
   No. 4:21-cv-08017-EMC, ECF No. 52 (N.D. Cal. Jun. 15, 2022) ("*Al-Ahmed I*") ................. 6

17

18

*Allen v. Wright,*
   468 U.S. 737 (1984) ............................................................................................... 7

19

20

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................. 12

21

22

*Baumer v. Pachl,*
   8 F.3d 1341 (9th Cir. 1993) ................................................................................. 22

23

*Boyle v. U.S.,*
   556 U.S. 938 (2009) ....................................................................................... 16, 17

24

25

*Brill v. Chevron Corp.,*
   804 Fed. Appx. 630 (9th Cir. 2020) .................................................................... 23

26

*Chaset v. Fleer/Skybox Int'l, LP,*
   300 F.3d 1083 (9th Cir. 2002) ............................................................................. 19

27

28

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.,*
   295 F. Supp. 3d 927 (N.D. Cal. 2018) ...................................................... 16, 18, 22

iii

2358565

*Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
  2012 WL 10731957 (C.D. Cal. June 29, 2012) ................................................................... 17

*Doan v. Singh*,
  617 F. App'x 684 (9th Cir. 2015) ..................................................................................... 16

*Doe I v. Cisco Sys.*,
  73 F. 4th 700 (9th Cir. 2023) ........................................................................................... 23

*Doe I v. Nestle USA, Inc.*,
  766 F.3d 1013 (9th Cir. 2014) ............................................................................... 9, 23, 25

*Doe v. Tapang*,
  2019 WL 3576995 (N.D. Cal. Aug. 6, 2019) ................................................... 19, 20, 25

*Fraser v. Team Health Holdings, Inc.*,
  2022 WL 971579 (N.D. Cal. Mar. 31, 2022) ................................................................. 16

*Gianelli v. Schoenfeld*,
  2021 WL 4690724 (E.D. Cal. Oct. 7, 2021) .................................................................... 21

*Global–Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011) ........................................................................................................ 22

*Grimmett v. Brown*,
  75 F.3d 506 (9th Cir. 1996) ....................................................................................... 11, 12

*Growth-Hill Land Co., LLC v. Gen. Motors LLC*,
  2013 WL 3853160 (N.D. Cal. July 23, 2013) ................................................................ 12

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
  896 F.2d 1542 (9th Cir. 1989) ..................................................................................... 3, 10

*Hamdan v. Rumsfeld*,
  548 U.S. 557 (2006) ........................................................................................................ 24

*Howard v. Am. Online Inc.*,
  208 F.3d 741 (9th Cir. 2000) ........................................................................................... 21

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  497 F. Supp. 3d 552 (N.D. Cal. 2020)............................................................................... 9

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016) ......................................................................................... 22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) .......................................................................................................... 8

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .......................................................................................................... 6

iv

DEFENDANT X CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:23-cv-02369-EMC

2358565

*Metaxas v. Lee,*
  503 F. Supp. 3d 923 (N.D. Cal. 2020).............................................................21

*Mohamed v. Jeppesen Dataplan, Inc.,*
  614 F.3d 1070 (9th Cir. 2010)...............................................................23, 24

*Nestle USA, Inc. v. Doe,*
  141 S. Ct. 1931 (2021) ............................................................................25

*Noland v. Chua,*
  816 F. App'x 202 (9th Cir. 2020)..............................................................11

*Novak v. United States,*
  795 F.3d 1012 (9th Cir. 2015).....................................................................7

*Odom v. Microsoft Corp.,*
  486 F.3d 541 (9th Cir. 2007) ...............................................................16, 17

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n,*
  298 F.3d 768 (9th Cir. 2002).................................................................9, 10

*Oren M. Atias v. Michael S. Phillips,*
  2018 WL 11355475 (C.D. Cal. Dec. 7, 2018)...........................................19

*Oscar v. Univ. Students Coop. Assn.,*
  965 F.2d 783 (9th Cir. 1992) ....................................................................18

*Pincay v. Andrews,*
  238 F.3d 1106 (9th Cir. 2001) ..................................................................11

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,*
  214 F. Supp. 3d 808 (N.D. Cal. 2016).......................................................15

*Presbyterian Church of Sudan v. Talisman Energy, Inc.,*
  582 F.3d 244 (2nd Cir. 2009) ..............................................................23, 25

*RJ v. Cigna Health & Life Ins. Co.,*
  625 F. Supp. 3d 951 (N.D. Cal. 2022)..................................................14, 16

*RJR Nabisco, Inc. v. Eur. Cmty.,*
  579 U.S. 325 (2016) .............................................................................13, 19

*Sanford v. MemberWorks, Inc.,*
  625 F.3d 550 (9th Cir. 2010).....................................................................21

*Sosa v. Alvarez-Machain,*
  542 U.S. (2004) .........................................................................................24

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016) ............................................................................6, 8

v

DEFENDANT X CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:23-cv-02369-EMC

2358565

*United States v. Alvelo-Ramos,*
   957 F. Supp. 18 (D.P.R. 1997) ................................................................................... 15

*United States v. Foster,*
   740 F.3d 1202 (8th Cir. 2014) ................................................................................... 15

*United States v. Gandy,*
   926 F.3d 248 (6th Cir. 2019) ..................................................................................... 15

*United States v. Harrell,*
   530 F.3d 1051 (9th Cir. 2008) ................................................................................... 15

*United States v. Ritchie,*
   342 F.3d 903 (9th Cir. 2003) ..................................................................................... 10

*United States v. Schultz,*
   586 F.3d 526 (7th Cir. 2009) ............................................................................... 14, 15

*Vess v. Ciba–Geigy Corp.,*
   317 F.3d 1097 (9th Cir. 2003) ................................................................................... 14

*In re XE Servs. Alien Tort Litig.,*
   665 F. Supp. 2d 569 (E.D. Va. 2009) .................................................................. 10, 24

*Yegiazaryan v. Smagin,*
   599 U.S. 533 (2023) ............................................................................................. 19, 20

*Young v. Schultz,*
   2023 WL 3324687 (N.D. Cal. May 8, 2023) ............................................................. 18

**State Cases**

*Ventura v. ABM Indus. Inc.,*
   212 Cal. App. 4th 258 (2012) ...................................................................................... 9

**Federal Statutes**

18 U.S.C. § 1028(a)(7) ............................................................................................... 14, 15

18 U.S.C. § 1029(a)(7) ......................................................................................... 14, 15, 16

18 U.S.C. § 1029(e)(9) ..................................................................................................... 14

18 U.S.C. § 1962(c) .......................................................................................... 11, 13, 16

18 U.S.C. § 1962(d) .................................................................................. 11, 13, 21, 22

18 U.S.C. § 1964(c) .......................................................................................................... 13

47 U.S.C. § 153(53) .......................................................................................................... 14

DEFENDANT X CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:23-cv-02369-EMC

2358565

**Other Authorities**

H.R.Rep. No. 827, 103d Cong., 2d Sess. 31 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3489 ............................................................................................................................ 15

Hon. Virginia A. Phillips, et al., *Federal Civil Procedure Before Trial*, § 9:223 (2020) ................................................................................................................................ 8

DEFENDANT X CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:23-cv-02369-EMC

2358565

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 21, 2023, at 1:30 p.m., or as soon thereafter as this matter can be heard, in the courtroom of the Honorable Edward M. Chen, located at San Francisco Courthouse, Courtroom 5 – 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant X Corp., as successor in interest to named defendant Twitter, Inc. ("Twitter"), will move this Court for an order dismissing Plaintiffs' First Amended Complaint ("FAC") as to Twitter.[1]

This motion is brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the Court lacks subject matter jurisdiction and that the FAC fails to state a claim upon which relief may be granted. This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declaration of Benjamin Berkowitz and accompanying exhibits, Twitter's Request for Judicial Notice, the prior-submitted Declaration of X Corp. Employee ("Twitter Employee Declaration")[2] and accompanying exhibits, all files and records in this action, oral argument, and such additional matters as may be judicially noticed by the Court or may come before the Court prior to or at the hearing on this matter.

The issues presented by Twitter's motion to dismiss are as follows:

1. Whether Plaintiffs' FAC alleges facts establishing Article III standing under Rule 12(b)(1); and

2. Whether the FAC states a claim upon which relief can be granted under Rule 12(b)(6).

---

[1] Twitter, the online platform, has been rebranded as "X." This Motion continues to refer to both the company and the platform as "Twitter" for ease of reference and because the events underlying Plaintiffs' FAC took place years before the formation of X Corp. and rebranding of the platform.
[2] Twitter previously filed the Twitter Employee Declaration on July 12, 2023, in support of Twitter's first Motion to Dismiss. ECF Nos. 28-5 (unredacted), 29-2 (redacted). On September 6, 2023, the Court granted Twitter's motion to seal a portion of that Declaration. ECF No. 43. For the convenience of the Court and the parties, in lieu of submitting an identical declaration and sealing motion in connection with the present Motion, Twitter relies herein on the prior-submitted Twitter Employee Declaration.

i

2358565

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION**

3        After Plaintiff siblings Areej Al-Sadhan and Abdulrahman Al-Sadhan filed a wide-ranging

4   complaint against Twitter and numerous persons and entities affiliated with the Kingdom of Saudi

5   Arabia ("KSA"), Twitter moved to dismiss that complaint as to each of Plaintiffs' claims against

6   it. ECF Nos. 1, 29.  In lieu of responding to that motion, Plaintiffs opted to amend their

7   complaint. ECF No. 42.  Their First Amended Complaint ("FAC"), like the initial complaint,

8   fails to state a claim against Twitter for numerous incurable reasons.  Plaintiffs' claims against

9   Twitter therefore should be dismissed with prejudice.

10       In 2014 and 2015, Twitter and certain Twitter accountholders were victims of state-

11  sponsored espionage carried out by the KSA.  The KSA allegedly targeted and recruited two

12  Twitter employees, Ahmad Abouammo and Ali Alzabarah, to access and provide the KSA with

13  information regarding certain Twitter accountholders without Twitter's knowledge or

14  authorization.  Upon learning that these rogue employees may have been compromised by a

15  foreign government, Twitter immediately took steps to protect its accountholders, including by

16  terminating Alzabarah's access to Twitter's computer systems, seizing his laptop, physically

17  escorting him out of the building, and notifying potentially affected accountholders.  Abouammo

18  had already left the company months earlier.  Thereafter, Twitter cooperated with the Federal

19  Bureau of Investigation and the U.S. Department of Justice ("DOJ") investigation into these

20  individuals' activities.  As a result of that investigation, the DOJ filed criminal charges against

21  Abouammo, Alzabarah, and another individual.  Following a jury trial, Abouammo—the only

22  defendant who was apprehended, as the others are believed to be in Saudi Arabia—was convicted

23  on numerous charges and sentenced by this Court to a term of incarceration.

24       This lawsuit comes more than seven years after the KSA-directed attack on Twitter and its

25  accountholders.  It seeks to blame Twitter for numerous alleged harms that were later carried out

26  by the KSA against Mr. Al-Sadhan and Ms. Al-Sadhan, two dissidents who used Twitter to

27  publicly criticize the KSA.  Plaintiffs claim to have suffered serious physical and psychological

28  harm at the hands of the KSA, including Mr. Al-Sadhan being kidnapped, tortured, and detained,

1 | and Ms. Al-Sadhan being harassed, threatened, and stalked. They assert civil RICO and Alien
2 | Tort Statute ("ATS") claims against Twitter, the KSA, and several alleged KSA agents.

3 |    Plaintiffs' FAC fails to state a claim and should be dismissed as to Twitter in its entirety.
4 | It is plain from Plaintiffs' FAC and the exhibits thereto—which include and incorporate the
5 | DOJ's superseding indictment against the rogue former Twitter employees—that Twitter was a
6 | *victim* of much of the conduct that Plaintiffs allege, and that it took no part in the KSA's
7 | espionage campaign or its subsequent abuse of Plaintiffs. Two similar lawsuits previously filed in
8 | this district by other Saudi dissidents seeking to hold Twitter liable for alleged harms perpetrated
9 | by the KSA following the *same events*—including one before this Court—have been dismissed
10 | with prejudice. *See Abdulaziz v. Twitter, Inc., et al.*, No. 3:19-cv-06694-LB (N.D. Cal.) (the
11 | "*Abdulaziz* action"); *Al-Ahmed v. Twitter, Inc.* No. 4:21-cv-08017-EMC (N.D. Cal.) (the
12 | "*Al-Ahmed* action"). Twitter respectfully submits that the Court should reach the same result
13 | here.

14 |    *First*, the FAC fails to establish a causal connection between the alleged unauthorized
15 | access of Mr. Al-Sadhan's account information in 2014 and 2015 and the harm each Plaintiff
16 | allegedly suffered years later. As a result, Plaintiffs lack Article III standing.

17 |    *Second*, and for substantially the same reasons, Plaintiffs fail to allege proximate
18 | causation, which is an essential element of their RICO and ATS claims.

19 |    *Third,* to the extent the FAC implicitly rests on the argument—already rejected in the
20 | *Abdulaziz* action—that Twitter is vicariously liable for its former employees' rogue conduct, the
21 | FAC fails in its entirety. Any attempted reliance on a *respondeat superior* theory of liability fails
22 | because the former employees acted beyond the scope of their employment and in fact
23 | "defraud[ed] Twitter," which was itself a victim of the espionage, as the incorporated superseding
24 | indictment makes clear.

25 |    *Fourth*, Plaintiffs fail to state a claim under RICO because their RICO claims are
26 | untimely and their allegations simply do not support a claim that Twitter engaged in criminal
27 | conduct or participated in a criminal enterprise of any kind.

28 |    *Fifth*, Mr. Al-Sadhan's ATS claim likewise fails for additional reasons, including because

---

2

DEFENDANT X CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:23-cv-02369-EMC

1    he fails to allege facts supporting his contention that Twitter had any role whatsoever in his

2    torture and because he improperly seeks to apply the ATS extraterritorially.

3    In sum, Plaintiffs cannot maintain this suit against Twitter.  They have sued a victim of the

4    KSA's alleged conduct, not a perpetrator of—or co-conspirator behind—Plaintiffs' injuries.  The

5    FAC should be dismissed against Twitter in its entirety and with prejudice.

6    ## II.    BACKGROUND

7    ### A.    Mr. Al-Sadhan joins Twitter and builds a "substantial" following for his public criticism of the KSA and Saudi royal family.

8    The FAC describes Plaintiff Abdulrahman Al-Sadhan as an aid worker and citizen of

9

10   Saudi Arabia.  FAC ¶ 12.  After attending middle school in the United States, he returned to Saudi

11   Arabia for a few years, after which he moved back to the United States in 2009 to attend college.

12   *Id.*  In 2011, while still living in the United States, he created a Twitter account with the handle

13   @sama7ti.  *Id.* ¶¶ 12, 104.  He used the account to criticize the KSA and Saudi royal family,

14   including Crown Prince Mohammed bin Salman, and to "retweet" dissident journalists and

15   activists.  *Id.* ¶¶ 104–105.  He built a "substantial" following for his account, which "was known

16   for its scorching and entertaining sarcasm" in criticizing the KSA.  *Id.* ¶ 104.

17   ### B.    Ahmad Abouammo and Ali Alzabarah engage in espionage against Twitter and its accountholders on behalf of the KSA.

18   In 2014, the KSA allegedly recruited two Twitter employees, Ahmad Abouammo and Ali

19   Alzabarah, to access Twitter account information in an act of state-sponsored espionage.  *Id.*

20   ¶¶ 6, 19, 20.  Over the course of several months in 2015, Abouammo and Alzabarah allegedly

21   provided the KSA with information about thousands of Twitter accountholders, including Mr. Al-

22   Sadhan.  *Id.* ¶¶ 61, 67, 75.  In late 2015, U.S. intelligence agencies informed Twitter that

23   Alzabarah and Abouammo had transmitted data to the KSA.  *Id.* ¶ 83.  Upon learning of this

24   misconduct, Twitter promptly acted to protect its accountholders.  Twitter immediately

25   confronted Alzabarah (who was then still a Twitter employee), seized his Twitter-owned laptop,

26   and escorted him from the building.  Pl. Ex.[3] 2 (Superseding Indictment, ECF No. 53, *United*

27   ─────────────────

28   [3] Throughout this Motion, "Pl. Ex." citations refer to the exhibits attached to Plaintiffs' FAC, *see* ECF No. 42-1, the contents of which the Court may consider when ruling on this Motion.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

3

2358565

1    *States v. Abouammo, et al.*, No. 19-cr-0621-EMC (N.D. Cal. Jul. 28, 2020)) ¶ 26(s); Pl. Ex. 3; *see*

2    *also* Criminal Complaint, *United States v. Abouammo, et al.*, No. 3:19-cr-000621-EMC (N.D.

3    Cal. Nov. 5, 2019), ECF No. 1, ¶ 85.  Abouammo had already resigned in May 2015.  Pl. Ex. 2

4    ¶ 26(k).  Twitter cooperated with the FBI's confidential investigation into Abouammo and

5    Alzabarah's activities.  *See, e.g.*, Pl. Ex. 2 ¶¶ 14–16 (discussing documents obtained from

6    Twitter); *id.* ¶¶ 12–13 (discussing information obtained from Twitter).

7             The United States Attorney's Office ultimately indicted Abouammo, Alzabarah, and

8    Ahmed Almutairi.  FAC ¶ 6; Pl. Ex. 2.  According to the July 2020 superseding indictment,

9    Abouammo and Alzabarah "fraudulently" and "without Twitter's approval" "used their positions

10   and access to information at Twitter" to provide the KSA government, Saudi Royal Family, and

11   related individuals "with nonpublic information about Twitter users."  Pl. Ex. 2 ¶ 21.  This

12   unauthorized disclosure of confidential information was contrary to their employment agreements

13   with Twitter and, in fact, was part of a scheme to "defraud Twitter."  *Id.* ¶ 14–15, 36, 38.  Neither

14   individual's job duties involved a need to access any Twitter user's private information, *id.* ¶ 18,

15   nor were they authorized to disclose user information in response to any government's disclosure

16   requests, *id.* ¶ 19.  *See also id.* ¶ 23 (Abouammo and Alzabarah operated "beyond the scope of

17   their job duties" in accessing Twitter accountholder information on behalf of the KSA).

18           **C.       Twitter notifies individuals whose accounts may have been compromised.**

19           On or about December 11, 2015, Twitter emailed a notification to holders of accounts that

20   appeared to have been accessed on behalf of the KSA.  *See* FAC ¶ 94; Twitter Employee Decl.

21   ¶¶ 2–3; *id.* Exs. 1–2.  Twitter notified Mr. Al-Sadhan via the email address that he had provided

22   to Twitter, advising that: "As a precaution, we are alerting you that your Twitter account is one of

23   a small group of accounts that may have been targeted by state-sponsored actors."  Twitter

24   Employee Decl. ¶¶ 2–3 & Ex. 1.

25           **D.       In March 2018, the KSA allegedly kidnaps Mr. Al-Sadhan.**

26           In March 2018—more than two years after Abouammo and Alzabarah allegedly accessed

27   Mr. Al-Sadhan's account information, and approximately four years after he returned to Saudi

28   Arabia—the KSA allegedly kidnapped him.  FAC ¶¶ 12, 110–113.  For the next two years, he was

---

4

2358565

1   allegedly detained, tortured, and kept in solitary confinement. *Id.* ¶¶ 117, 154–155, 159.  In 2021,

2   after a "sham" trial, he was sentenced by the KSA to 20 years in prison, followed by a 20-year

3   travel ban. *Id.* ¶ 163.  His family has since been unable to contact him. *Id.* ¶¶ 12, 164–165.

4        **E.     Ms. Al-Sadhan publicly criticizes the KSA over its treatment of her brother.**

5        Plaintiff Areej Al-Sadhan describes herself as a human rights activist who has spoken out

6   publicly against the KSA's abuse of her brother. *Id.* ¶¶ 13.  She has petitioned the United Nations

7   and numerous U.S.-based government officials for assistance. *Id.* ¶ 144.  She also publicly

8   decries the KSA's treatment of her brother on Twitter, which she uses as "a dedicated tool of her

9   advocacy." *Id.* ¶ 147.  Ms. Al-Sadhan's persistent efforts have proven effective: "Because of" her

10  "public activism, United States officials and international organizations began pressuring" the

11  KSA to account for Mr. Al-Sadhan's whereabouts. *Id.* ¶ 151.  But her advocacy efforts have also

12  carried unfortunate costs.  As a result of her public criticism of the KSA, she alleges she has been

13  harassed, stalked, and threatened by the KSA, and fears being kidnapped. *Id.* ¶¶ 8, 141, 146–147,

14  149–150, 166–167, 176.  Ms. Al-Sadhan has not alleged that Alzabarah or Abouammo accessed

15  her Twitter account information or that it was otherwise obtained by the KSA from Twitter.

16       **F.     Ms. Al-Sadhan brings this suit on behalf of herself and her brother.**

17       Ms. Al-Sadhan filed this lawsuit against Twitter, Abouammo, Alzabarah, the KSA, and

18  several of its agents.  She alleges that under Federal Rule of Civil Procedure 17, she is the "next

19  friend" of Mr. Al-Sadhan because he is detained in Saudi Arabia, and accordingly that Mr. Al-

20  Sadhan is the real party in interest to claims she asserts on his behalf. *Id.* ¶ 13.

21       **G.     Procedural History**

22       Plaintiffs' lawsuit follows on two prior actions brought in this district by other Saudi

23  dissidents asserting claims based upon the same data breach by the KSA.  The *Abdulaziz* and *Al-*

24  *Ahmed* actions alleged substantially the same conduct by Twitter alleged by Plaintiffs here.  And

25  each of those prior actions failed for substantially the same reasons that this action should be

26  dismissed.  In *Abdulaziz*, over the course of five complaints and successive motions to dismiss by

27  Twitter, the court ultimately dismissed with prejudice the plaintiff's complaint on numerous

28  grounds, including (1) lack of Article III standing; (2) failure to plead plausibly that Twitter

1    ratified its rogue employees' misconduct or that *respondeat superior* liability should apply;

2    (3) that the claims were barred by the applicable statutes of limitations; and (4) that the plaintiff's

3    claims were not plausibly alleged. *See Abdulaziz v. Twitter, Inc.*, 2021 WL 2986400 (N.D. Cal.

4    July 15, 2021) ("*Abdulaziz III*"); *Abdulaziz v. Twitter, Inc.*, 2021 WL 633812 (Feb. 18, 2021)

5    ("*Abdulaziz II*"); *Abdulaziz v. Twitter, Inc.*, 2020 WL 6947929 (Aug. 12, 2020) ("*Abdulaziz I*").

6    Likewise in *Al-Ahmed*, over the course of two complaints and two motions to dismiss by Twitter,

7    this Court ultimately dismissed with prejudice the plaintiff's claims against Twitter on several

8    independent grounds, including (1) lack of Article III standing because the plaintiff "failed to

9    establish a causal nexus between Twitter's actions and his injuries"[4]; (2) that the claims were

10   barred by the applicable statutes of limitations; and (3) that Section 230 of the Communications

11   Decency Act immunized Twitter with respect to certain claims. *Al-Ahmed v. Twitter, Inc.*, 2023

12   WL 27356 (N.D. Cal. Jan. 3, 2023) ("*Al-Ahmed II*"); *Al-Ahmed v. Twitter, Inc.*, No. 4:21-cv-

13   08017-EMC, ECF No. 52 (Amended Order) (N.D. Cal. Jun. 15, 2022) ("*Al-Ahmed I*").

14   **III.    ARGUMENT**

15          **A.    Plaintiffs fail to establish Article III standing to pursue claims against Twitter
                    related to the alleged 2014–2015 data breach.**
16

17          The FAC describes a brutal and unconscionable campaign of state-sponsored abuse

18   carried out by the KSA.  Plaintiffs' allegations detail the KSA's arrest, torture, and detention of

19   Mr. Al-Sadhan in 2018, followed by its harassment and stalking of his sister.  While these alleged

20   injuries are several and harrowing, they—by Plaintiffs' own allegations—were inflicted at the

21   hands of the KSA, not Twitter.

22          To establish Article III standing, "[a] plaintiff must have (1) suffered an injury in fact,

23   (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

24   redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

25   Plaintiffs bear the burden to plead (and ultimately prove) "a causal connection between the injury

26   and the conduct complained of—the injury has to be fairly traceable to the challenged action of

27   the defendant." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations omitted).

28   _____

     [4] In *Al-Ahmed*, one of the plaintiff's many claims (for invasion of privacy) survived the Court's
     standing analysis, but that claim was dismissed for other reasons. *See Al-Ahmed II* at *13.

                                                      6

2358565

1   Further, "the line of causation between the [alleged] illegal conduct and injury" must not be "too

2   attenuated." *Allen v. Wright*, 468 U.S. 737, 752 (1984).  Although Plaintiffs have pleaded various

3   injuries, none is "fairly traceable" to Twitter's alleged conduct.

   ### 1.    Mr. Al-Sadhan lacks Article III standing to sue Twitter because the KSA, not Twitter, caused his arrest, torture, and detention.

6         According to the FAC, Mr. Al-Sadhan has suffered a litany of terrible harms, including

7   kidnapping, torture, unfair conviction, and imprisonment in Saudi Arabia.  FAC ¶ 1; Pl. Ex. 1

8   (Affidavit of Plaintiff Areej Al-Sadhan) ¶ 6.  Yet Plaintiffs' factual allegations make clear that

9   those injuries were perpetrated by the KSA, not Twitter.  *See, e.g.*, Pl. Ex. 1 ¶ 6.  Mr. Al-Sadhan

10  has failed to establish any causal nexus between Twitter's alleged conduct and the abuses he

11  suffered, which, according to the FAC, were carried out by a foreign police force at the behest of

12  a foreign sovereign.  Moreover, there is a lack of temporal proximity.  The FAC's allegations

13  regarding Twitter focus on 2013, when Twitter hired Abouammo and Alzabarah, and 2014–2015,

14  when the KSA undertook its campaign to compromise Twitter accountholder data with the

15  assistance of those two rogue employees.  *See, e.g.*, FAC ¶¶ 53–61, 79–82.  The alleged harms

16  suffered by Mr. Al-Sadhan did not begin until years later, on March 12, 2018, when he was

17  allegedly kidnapped by KSA secret police in Saudi Arabia.  *See* Pl. Ex. 1 ¶ 6.

18        This lack of temporal proximity is nearly identical to what was alleged by the plaintiff in

19  *Abdulaziz*, who similarly claimed to have suffered harm in 2018 arising from the data breach that

20  occurred in 2014–2015.  As the *Abdulaziz* court explained, "[t]here is no temporal proximity.

21  And the plaintiff's allegation that [the injury inflicted by the KSA] is related to the Twitter breach

22  is a conclusion, not a fact allegation."  *Abdulaziz II* at *5.  Thus, "the plaintiff has not shown a

23  causal link between the compromise of his Twitter account and his persecution three years later."

24  *Abdulaziz II* at *6 (dismissing complaint for lack of Article III standing); *see also Abdulaziz III* at

25  *2 (same); *Abdulaziz I* at *6 (same).  The reasoning of *Abdulaziz* applies equally here, and

26  dismissal is again warranted for lack of Article III standing.  *See also Novak v. United States*, 795

27  F.3d 1012, 1019 (9th Cir. 2015) (dismissing claim for lack of standing where plaintiff alleged that

28  third parties "may well have engaged in the[] injury-inflicting actions").

2358565

### 2.  Ms. Al-Sadhan lacks Article III standing to sue Twitter because the KSA, not Twitter, is responsible for stalking and harassing her.

Ms. Al-Sadhan, like her brother, claims to have suffered injuries at the hands of the KSA after she began to publicly criticize the Saudi regime in 2019.  Yet, as with Mr. Al-Sadhan, the harms alleged by Ms. Al-Sadhan are not "fairly traceable" to Twitter's alleged conduct.  *See Spokeo*, 136 S. Ct. at 1547.  By her own admission, Ms. Al-Sadhan was targeted by the KSA because of her public advocacy—not because of any conduct undertaken by Twitter.  *See, e.g.*, Complaint ("Compl.") (ECF No. 1) ¶ 37 (alleging that the KSA "stalked, harassed, threatened, and intimidated" her "[b]ecause she dared call out [the] KSA's history of repression, petition her U.S. representatives to help her brother, and condemn the Saudi Criminal Enterprise's" conduct)[5]; FAC ¶ 140 (alleging that she "became a target" of the KSA after she "began speaking out against" the KSA).  The same was true for the plaintiff in *Abdulaziz*, who was persecuted years after the data breach *as a result of* his own public criticism of the KSA, and who accordingly lacked Article III standing to sue Twitter.  *See Abdulaziz II* at *6.

The FAC does not allege that Ms. Al-Sadhan suffered these harms as a result of Twitter's own conduct in connection with the 2014–2015 data breach.  Nor could it plausibly do so: she does not allege that her Twitter data was exposed as a result.  Moreover, the FAC makes clear that various other parties undertook the numerous alleged acts of abuse and harassment towards her.  Those other parties, several of whom are named as defendants in this action, are responsible for Ms. Al-Sadhan's alleged injuries.  Because Ms. Al-Sadhan has failed to establish a causal connection between Twitter's alleged conduct and her alleged injuries, she lacks Article III standing and her claims against Twitter must be dismissed.

### B.  Plaintiffs' claims also should be dismissed for lack of proximate causation.

Plaintiffs' claims also should be dismissed for failure to plead proximate causation, which imposes an even *higher* causation standard than the Article III inquiry.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014).  As in *Abdulaziz*, "[f]or the

---

[5] The Court may consider statements made in Plaintiffs' earlier pleadings as party admissions. Hon. Virginia A. Phillips, et al., *Federal Civil Procedure Before Trial*, § 9:223 (2020) (*citing Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989) ("The amendment of a pleading does not make it any the less an admission of the party.")).

DEFENDANT X CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:23-cv-02369-EMC

2358565

1    reasons that the plaintiff[s] did not plead causation for standing," they also fail to plead proximate

2    causation. *Abdulaziz III* at *3. Causation is a required element for each of Plaintiffs' claims. *See*

3    *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 595–96

4    (N.D. Cal. 2020) (RICO); *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1022, 1026 (9th Cir. 2014)

5    (ATS). For the same reasons Plaintiffs fail to establish Article III standing, they also fail to meet

6    the higher bar required to plead proximate causation. Their claims should therefore be dismissed.

7            **C.      As the district court held in *Abdulaziz*, Twitter did not authorize or ratify**
               **Abouammo's and Alzabarah's rogue actions and is not liable for them.**
8
9            The FAC implicitly seeks to hold Twitter indirectly liable for conduct perpetrated by its

10   rogue former employees on behalf of the KSA. But Plaintiffs do not invoke a *respondeat*

11   *superior* theory of liability, and their factual allegations fail to support any such theory. As is

12   clear from the superseding indictment attached to the FAC, as well as Plaintiffs' admissions in

13   their prior Complaint, Alzabarah and Abouammo acted both without Twitter's authorization and

14   beyond the scope of their employment when misappropriating accountholder data on behalf of the

15   KSA. This forecloses Plaintiffs' claims against Twitter, as the FAC otherwise contains no well-

16   pleaded facts suggesting that Twitter is *directly* liable under RICO or the ATS.

17           For a claim in tort, "an employer may be liable for an employee's act where the employer

18   either authorized the tortious act or subsequently ratified an originally authorized tort." *Ventura*

19   *v. ABM Indus. Inc.*, 212 Cal. App. 4th 258, 272 (2012). Likewise, *respondeat superior* may apply

20   under RICO only if the alleged conduct occurred within the course and scope of the employee's

21   employment *and* if the employer benefited from the employee's RICO violation. *Oki*

22   *Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775–76 (9th Cir. 2002).

23   Neither of these required elements is alleged by the FAC. *See id.* at 775 ("This requirement" that

24   an employer benefit from an employee's RICO violation "ensures that when employers are the

25   'victims' of racketeering activity, they incur no RICO liability.").

26           *Respondeat superior* liability cannot apply here. Plaintiffs' pleadings and the superseding

27

28

1  indictment show that Twitter did not authorize or ratify the rogue employees' conduct.[6]  By

2  Plaintiffs' own account, the employees "used their positions" at Twitter to "*fraudulently*" disclose

3  Mr. Al-Sadhan's identifying information to the KSA.  Compl. (ECF No. 1) ¶ 38 (emphasis

4  added); *see also id.* ¶ 48 (acknowledging Alzabarah's access was for "non-work" purposes).  And

5  the DOJ's superseding indictment—which forms the factual basis of Plaintiffs' FAC—makes

6  clear Alzabarah and Abouammo's illegal conduct was "beyond the scope of their job duties" and

7  "contrary to Twitter's policies."  Pl. Ex. 2 ¶¶ 23, 24; *see also, e.g., id.* ¶ 2 ("Neither

8  ABOUAMMO nor ALZABARAH had authority from Twitter to receive, access, or produce user

9  information pursuant to any governmental emergency disclosure request.").

10  In *Abdulaziz I*, the court—after considering substantially the same factual allegations as to

11  Abouammo's and Alzabarah's misconduct at Twitter—held that those rogue employees were

12  "demonstrably not acting in the scope of their employment and instead were acting as agents for

13  the Saudi regime." *Abdulaziz I* at \*7.  The court reasoned that "providing [them] a job and access

14  to [Twitter's] platform and user information does not establish Twitter's respondeat superior

15  liability for its rogue employees' unauthorized spying for Saudi operatives." *Id.*

16  As in *Abdulaziz*, Plaintiffs' FAC and the superseding indictment incorporated therein

17  establish that Twitter was a victim of Abouammo's and Alzabarah's conduct; that Twitter did not

18  benefit from its rogue employees' misconduct; and that their transmission of nonpublic data to the

19  KSA was outside the scope of their Twitter employment and contrary to Twitter's policies.

20  Accordingly, Plaintiffs' claims under the RICO and ATS statutes—each of which implicitly seeks

21  to hold Twitter liable for its rogue employees' conduct—should be dismissed. *See In re XE*

22  *Servs. Alien Tort Litig.*, 665 F. Supp. 2d 569, 590–91 (E.D. Va. 2009) (dismissing ATS case

23  where plaintiffs failed to plead vicarious liability); *Oki*, 298 F.3d at 777 (affirming dismissal of

24  RICO claims where plaintiff failed to plead facts to support respondeat superior liability).

25

26

---

[6] The Court may consider the contents of the superseding indictment, as it is attached to the FAC.
27  *See Hal Roach Studios, Inc.*, 896 F.2d at 1555 n.19.  Even if that charging instrument were not
attached to the FAC, it would still be incorporated by reference because Plaintiffs rely heavily on
28  the superseding indictment for the FAC's allegations against Twitter. *See United States v.*
*Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also, e.g.*, FAC ¶¶ 53–61.

10

2358565

### D.   Plaintiffs' RICO claims fail for several additional reasons.

The FAC asserts two civil RICO claims: one alleging a substantive RICO violation under 18 U.S.C. § 1962(c), and another alleging a RICO conspiracy under 18 U.S.C. § 1962(d).  In addition to the reasons set forth in Sections III.A–C above, these claims fail because they are untimely and the FAC fails to allege facts to support several essential elements for each claim.

#### 1.   Plaintiffs' RICO claims against Twitter are untimely.

The statute of limitations for civil RICO claims is four years. *See Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).  Under the "injury discovery" rule for civil RICO claims, the limitations period "begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (internal quotations omitted).  "Thus, the 'injury discovery' rule creates a disjunctive two-prong test of actual or constructive notice, under which the statute begins running under either prong." *Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001).

Plaintiffs' RICO claims accrued no later than December 11, 2015, when Twitter notified Mr. Al-Sadhan via email that his account information may have been targeted by a state-sponsored actor. *See* Twitter Employee Decl. (ECF Nos. 28-5, 29-2) ¶ 2–3; *id.* Exs. 1 & 2; FAC ¶ 94.  That notification (which was also widely covered by the press at the time)[7] put Plaintiffs on constructive notice of the purported injury underlying their claims against Twitter. *See Pincay*, 238 F.3d at 1109–10 (holding that a plaintiff's receipt of a written disclosure of purported injury constitutes constructive notice sufficient to start the clock on a civil RICO claim); *Noland v. Chua*, 816 F. App'x 202, 203 (9th Cir. 2020) (same).

Plaintiffs concede that Twitter sent email notifications to affected accountholders on December 11, 2015, FAC ¶ 94, but Ms. Al-Sadhan now claims on her brother's behalf that he did not "receive or see" that notification, *id.* ¶ 95, and further that it was deficient because it did not inform the recipients that the KSA was behind the data breach, *id.* ¶ 96.  However, Ms. Al-Sadhan's allegation that her brother did not receive the notification is conclusory and unsupported

---

[7] *See* Exhibits A through D to Twitter's Request for Judicial Notice ("RJN"). *See also* Complaint (ECF 1-2), Ex. 12 (October 20, 2018 New York Times also outside the statute of limitations period); *Abdulaziz I* at *2 ("The plaintiff alleges that he . . . learned about the unauthorized access when he read about it in the New York Times on October 20, 2018.").

11

2358565

1   by any well-pleaded facts.  Given Ms. Al-Sadhan's claim that no family members have heard

2   from Mr. Al-Sadhan since April 2021, *see* ¶ 164, it is implausible that she has confirmed any facts

3   with Mr. Al-Sadhan regarding his recollection of Twitter's 2015 notification, which was not

4   mentioned in her original complaint.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("mere

5   conclusory statements" and implausible allegations are insufficient to state a claim).

6          Moreover, the Court rejected precisely this same argument made by the plaintiff in *Al-*

7   *Ahmed*, holding that the plaintiff's claimed ignorance of the 2015 notification could not override

8   "the undisputed evidence that Twitter's notice was sent," *Al-Ahmed II* at *9.  Similarly, the Court

9   rejected the argument that the plaintiff's "ignorance of the identity of the perpetrators" affected

10  the running of the statutes of limitations, holding that "by virtue of the 2015 notices, if received,

11  [the plaintiff] would have been made aware that he was injured as a result of" the data breach.  *Al-*

12  *Ahmed II*, at *9.  Accordingly, the Court held in *Al-Ahmed* that the plaintiff's claims against

13  Twitter pertaining to the KSA-directed data breach accrued on December 11, 2015.  *Id.*  The court

14  in *Abdulaziz* reached the same conclusion.  *See Abdulaziz II* at *7 (rejecting arguments that

15  plaintiff did not receive Twitter's notification and that the notification was inadequate).  Thus, the

16  Court should reach the same conclusion here and hold that Plaintiffs' RICO claims accrued in

17  December 2015, rendering those claims untimely by several years.

18         Plaintiffs' remaining allegations do not solve their timeliness problem.  The FAC contends

19  that Mr. Al-Sadhan did not "discover" his injury until April 5, 2021—over five years after the

20  KSA obtained his confidential Twitter account data and more than three years after his

21  kidnapping occurred and his detention began.  *See* FAC ¶ 171.  According to the FAC, it was not

22  until that date—when he was sentenced to 20 years of further detention, followed by a 20-year

23  travel ban—that Mr. Al-Sadhan realized the KSA had deprived him of his ability to "pursue

24  business opportunities in the United States or obtain post-graduate employment in the United

25  States."  *Id.*  The "injury discovery" rule, however, "focuses solely on the injury caused by the

26  *predicate act*" underlying the alleged RICO violation.  *Grimmett*, 75 F.3d at 511 (emphasis

27  added); *see also Growth-Hill Land Co., LLC v. Gen. Motors LLC*, 2013 WL 3853160, at *6 (N.D.

28  Cal. July 23, 2013).  Here, Plaintiffs claim that Twitter is liable for predicate acts that allegedly

12

2358565

1   occurred in 2014 and 2015, when Twitter's rogue former employees misappropriated

2   accountholder data and transmitted that data to the KSA. *See* FAC ¶¶ 183(a)–(b), 190(a)–(b).

3   Mr. Al-Sadhan was on constructive notice of those acts—and of the injury resulting from them,

4   *i.e.*, the alleged misappropriation of his confidential user data on behalf of a foreign

5   government—by December 11, 2015, when Twitter sent him the email notification. Accordingly,

6   for the same reasons as in *Al-Ahmed* and *Abdulaziz*, Plaintiffs' RICO claims are time-barred

7   because they were not filed within four years of December 11, 2015.[8]

8              **2.      Plaintiffs fail to plead adequate facts to support their RICO claims.**

9          Plaintiffs' RICO claims against Twitter—alleging violations of 18 U.S.C. §§ 1962(c) and

10  (d)—each arise under 18 U.S.C. § 1964(c), which creates a private right of action for "[a]ny

11  person injured in his business or property by reason of a violation of section 1962." To state a

12  civil RICO claim under § 1964(c), a plaintiff must allege that each defendant participated in the

13  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as

14  'predicate acts') (5) causing [domestic] injury to the plaintiff's business or property." *Abcarian v.*

15  *Levine*, 972 F.3d 1019, 1028 (9th Cir. 2020) (quotation marks omitted); *see RJR Nabisco, Inc. v.*

16  *Eur. Cmty.*, 579 U.S. 325, 346 (2016) (specifying that a civil RICO plaintiff must "allege and

17  prove a *domestic* injury to its business or property").

18         The FAC fails to allege well-pleaded facts showing that Twitter engaged in a pattern of

19  racketeering activity. Nor does the FAC plausibly allege that Twitter participated in the conduct

20  of a qualifying RICO "enterprise," or that either Plaintiff suffered a domestic injury to their

21  "business or property" as a result of any alleged RICO violation. Each of those deficiencies

22  forecloses Plaintiffs' RICO claims. The FAC also lacks any allegations establishing that Twitter

23  entered into any agreement to commit predicate acts, or that it was aware of the essential nature

24  and scope of the alleged enterprise, both of which are additionally required under § 1962(d).

25              **a.      The FAC fails to allege that Twitter engaged in a pattern of**
               **racketeering activity.**

26

27         "Where RICO is asserted against multiple defendants, a plaintiff must allege at least two

---

[8] Mr. Al-Sadhan's kidnapping by the KSA took place on March 12, 2018, which is also outside
the four-year statute of limitations for civil RICO claims. *See* Pl. Ex. 1 ¶ 6.

DEFENDANT X CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:23-cv-02369-EMC

2358565

1  predicate acts by *each* defendant." *RJ v. Cigna Health & Life Ins. Co.*, 625 F. Supp. 3d 951, 961

2  (N.D. Cal. 2022) (quotation marks and citation omitted).  Plaintiffs have failed to allege such

3  predicate acts by Twitter.  The FAC invokes a slew of predicate offenses allegedly committed by

4  members of the alleged Saudi Criminal Enterprise, but only two such offenses arise from conduct

5  bearing *any* relationship to Twitter: alleged violations of 18 U.S.C. § 1028(a)(7), which prohibits

6  identity theft in connection with other "unlawful activity," and 18 U.S.C. § 1029(a)(7), which

7  prohibits the knowing use, with fraudulent intent, of "a telecommunications instrument that has

8  been modified or altered to obtain unauthorized use of telecommunications services."  *See* FAC

9  ¶¶ 183(a)–(b), 190(a)–(b) (alleging violations of these two statutes arising from the Twitter data

10  breach).  Plaintiffs fail to plead the essential elements of either offense.[9]

11
           (i)      **The FAC fails to plead a violation of 18 U.S.C.**
12                         **§ 1029(a)(7) by Twitter.**

13        Plaintiffs' allegations fail to satisfy the essential elements of § 1029(a)(7) in multiple

14  respects.  The elements of an offense under § 1029(a)(7) are: "(1) knowingly trafficking in a

15  telecommunications instrument that has been modified or altered to obtain unauthorized use of

16  telecommunications services; (2) intent to defraud; and (3) conduct which affected interstate

17  commerce."  *United States v. Schultz*, 586 F.3d 526, 530 (7th Cir. 2009).  *First*, no

18  "telecommunications service," as defined by the relevant statute, is at issue here.  A

19  "telecommunications service" is "the offering of telecommunications *for a fee* directly to the

20  public, or to such classes of users as to be effectively available directly to the public, regardless of

21  the facilities used."  47 U.S.C. § 153(53) (emphasis added); 18 U.S.C. § 1029(e)(9).  As the FAC

22  concedes, Twitter is "a free-access" website, not a paid telecommunications service.  FAC ¶ 14.

23  *Second*, the FAC pleads no facts suggesting that any "telecommunications instrument" was

24  "modified" or "altered" in connection with the alleged misappropriation of accountholder data by

25  the KSA.  To the contrary, the FAC alleges that Twitter's employees had "access" to Twitter's

26  accountholder information, and that they "exploited" that access.  FAC ¶ 6; *see also, e.g., id.*

27  ¶ 37(a) (alleging Abouammo had "unfettered access to confidential user data").  The FAC simply

---

28  [9] Because these RICO predicates "sound in fraud," they must be pleaded with particularity under
Rule 9(b).  *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1103–04 (9th Cir. 2003).  But Plaintiffs'
allegations fail to state a claim even under Rule 8's more liberal pleading standard.

14

2358565

1   does not plead a violation of § 1029(a)(7), which is a statute used to prosecute the "free-riding"

2   theft of paid telecommunications services like mobile phones, cable television, and satellite

3   television, using modified devices or hardware.  *See United States v. Alvelo-Ramos*, 957 F. Supp.

4   18 (D.P.R. 1997); *Schultz*, 586 F.3d at 530; *United States v. Harrell*, 530 F.3d 1051, 1054 (9th

5   Cir. 2008); *see also* H.R.Rep. No. 827, 103d Cong., 2d Sess. 31 (1994), *reprinted in* 1994

6   U.S.C.C.A.N. 3489, 3511 (describing this legislation as "criminaliz[ing] the use of cellular

7   phones that are altered . . . to allow free riding on the cellular phone system").  And *third*,

8   Plaintiffs have failed to allege well-pleaded facts that Twitter acted with the requisite "intent to

9   defraud," which is entirely implausible on the facts alleged: Twitter could not have the intent to

10   defraud *itself* of the value of its own service (once again, a free service that does not meet the

11   definition of "telecommunication service" in the first place).

   (ii)   **The FAC fails to plead a violation of 18 U.S.C.
12          § 1028(a)(7) by Twitter.**

13   Plaintiffs fare no better with Section 1028(a)(7).  That provision "forbids the use of

14   another person's identity in connection with 'any unlawful activity' that violates federal law or

15   constitutes a felony under state or local law." *United States v. Foster*, 740 F.3d 1202, 1205, n.2

16   (8th Cir. 2014); *see also United States v. Gandy*, 926 F.3d 248, 258 (6th Cir. 2019) (describing

17   Section 1028(a)(7) as requiring a "predicate" offense.  Plaintiffs have pleaded no predicate

18   offense to accompany the alleged identity theft facilitated by Twitter's rogue former employees

19   here.  As discussed above, Plaintiffs do not plausibly allege a violation of § 1029(a)(7).  Nor do

20   they plead facts plausibly establishing that Twitter committed any other federal offense, or any

21   felony under state law.  This precludes Plaintiffs from relying on Section 1028(a)(7) as a

22   predicate act for purposes of stating a substantive RICO claim against Twitter in particular. *See*

23   *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 824–25

24   (N.D. Cal. 2016) ("Because plaintiffs do not allege any other violation of federal law (except wire

25   and mail fraud which as discussed above are insufficiently pleaded), and plaintiffs have failed to

26   allege any *felony* conduct under state law, plaintiffs cannot rest their RICO claim on a predicate

27   act under § 1028(a)(7)."), *aff'd*, 890 F.3d 828 (9th Cir. 2018).

28   Because the FAC fails to plead facts establishing a violation of Section 1028(a)(7) or

2358565

1  Section 1029(a)(7) by Twitter, and because none of the other alleged predicate offenses in the

2  FAC—kidnapping, torture, murder, and conspiracy to commit those violent acts—are plausibly

3  attributable to Twitter, Plaintiffs have not alleged "at least two predicate acts" by Twitter, *see*

4  *Cigna Health*, 625 F. Supp. 3d at 961, and so their substantive RICO claim against Twitter fails.

        **b.**    **The FAC fails to allege that Twitter participated in the "conduct" of a qualifying RICO "enterprise."**

6        The FAC also fails to plausibly allege that Twitter participated in the "conduct" of a

7  qualifying RICO "enterprise." *See* 18 U.S.C. § 1962(c) (requiring that the defendant "participate,

8  directly or indirectly, in the conduct of such enterprise's affairs"). Because the alleged "Saudi

9  Criminal Enterprise" is not a real legal entity, *see* FAC ¶¶ 14–26 (describing the composition of

10  the alleged enterprise), Plaintiffs must plead the existence of an "associated-in-fact" enterprise.

11  *See Odom v. Microsoft Corp.*, 486 F.3d 541, 548 (9th Cir. 2007). This requires facts sufficient to

12  demonstrate that Twitter, the KSA, and its agents formed a joint entity with a common, enduring

13  purpose of engaging in a course of conduct, and that this entity exists independently of the alleged

14  racketeering activity. *Boyle v. U.S.*, 556 U.S. 938, 946 (2009); *Doan v. Singh*, 617 F. App'x 684,

15  685–86 (9th Cir. 2015); *see also Odom*, 486 F.3d at 552 (discussing the importance of "whether

16  the associates' behavior was 'ongoing' rather than isolated activity"). Allegations of mere

17  commercial relationships entered for ordinary business reasons are insufficient. *See Fraser v.

18  Team Health Holdings, Inc.*, 2022 WL 971579, at *11 (N.D. Cal. Mar. 31, 2022).

19        As discussed in Section III.C above, the allegations and accompanying exhibits in the

20  FAC demonstrate that Twitter and the KSA are far from partners in an enduring, common entity.

21  Instead, Twitter and the KSA are diametrically *opposed* with respect to the allegations in the

22  FAC: Twitter itself was a victim of the KSA, which enlisted Abouammo and Alzabarah to

23  undertake covert acts of espionage against Twitter, and which were beyond the scope of their

24  employment and in contravention of their obligations to Twitter. *See supra*, Section III.C; Pl. Ex.

25  2 ¶¶ 14–15, 18–19, 21, 23. Those facts render implausible any suggestion that Twitter "directed"

26  the conduct of its rogue employees. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales

27  Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 983 (N.D. Cal. 2018) (observing that "some

28  part in directing the enterprise's affairs is required"); *cf., e.g., Abdulaziz I*, at *7 ("[T]he

16

DEFENDANT X CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:23-cv-02369-EMC

1   December 2015 notice defeats any claim that Twitter ratified its employees' conduct").

2        Ignoring those facts, Plaintiffs rest their enterprise theory on an alleged commercial

3   relationship between Twitter and the KSA, based on the notion that the KSA was "heavily

4   invested" in Twitter during the alleged conspiracy. FAC ¶ 14. Plaintiffs rely on three alleged

5   facts: (1) that Saudi Prince Alwaleed Bin Talal's private investment firm Kingdom Holding

6   Company ("KHC") invested in Twitter in 2011, several years before the rogue former employees'

7   misconduct in this case; (2) that Bin Talal increased that investment to "own more than 5% of

8   Twitter" in 2015; and (3) that KHC (which is alleged to be partially owned by the KSA) owned

9   substantial Twitter stock as of October 28, 2022,[10] the day Twitter stock stopped trading publicly.

10   *Id.*; *see* RJN Ex. E at 2 (SEC filing showing that shares "were suspended from trading before

11   market open on October 28, 2022"). These allegations fail to establish the existence of a RICO

12   enterprise. *See Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 2012 WL 10731957, at *8

13   (C.D. Cal. June 29, 2012) (collecting cases and holding that "parties that enter commercial

14   relationships for their own gain or benefit" do not constitute an enterprise) (cleaned up).

15        What is more, the ordinariness (and attenuated nature) of the parties' commercial

16   relationship is further confirmed by the fact that Twitter's stock was *publicly available* on

17   secondary markets from November 2013 through October 2022—a period that more than spans

18   the entirety of the conduct alleged in Plaintiffs' FAC. *See* RJN Ex. F at 41–42 (SEC filing

19   showing Twitter's Initial Public Offering date).

20        The FAC's allegations of an ordinary commercial investment relationship fail to establish,

21   as they must, that Twitter forged an enterprise with the KSA and its agents to engage in

22   racketeering activity, and that they functioned as a "continuing unit" through "ongoing" (rather

23   than "isolated") activity. *See Odom*, 486 F.3d at 552; *see also Boyle*, 556 U.S. at 946. This

24   failure to allege an "enterprise" including Twitter requires dismissal of Plaintiffs' RICO claims

25   against Twitter. *See Abcarian*, 972 F.3d at 1028.

26

27

28   [10] The Complaint does not identify when the stock held as October 28, 2022 was purchased, nor whether the October 28, 2022 holdings included any of the stock originally purchased in 2011.

1

                **c.**      **Plaintiffs fail to allege that they suffered a domestic injury to their business or property.**

2

3

                      **(i)**     **Plaintiffs fail to allege a qualifying injury to their business or property.**

4        Plaintiffs' RICO claims should be dismissed also for failing to allege an injury that

5 qualifies for relief under the statute. "To successfully plead a RICO injury, Plaintiffs must satisfy

6 two requirements. First, they must plausibly allege a harm to a specific business or property

7 interest"—"a categorical inquiry typically determined by reference to state law." *In re Chrysler-*

8 *Dodge-Jeep*, 295 F. Supp. 3d at 957 (citation omitted). "Second, they must plausibly allege that

9 their injury has resulted in concrete financial loss." *Id.* Allegations of personal injuries, such as

10 emotional distress, harassment, or physical injury, are not cognizable under RICO. *Oscar v.*

11 *Univ. Students Coop. Assn.*, 965 F.2d 783, 785–87 (9th Cir. 1992), *abrogated on other grounds by*

12 *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (en banc).

13        The FAC fails to satisfy these requirements. As in the prior Complaint, the FAC alleges

14 fundamentally personal injuries on behalf of each Plaintiff: Mr. Al-Sadhan was kidnapped,

15 tortured, and detained, while Ms. Al-Sadhan was harassed, threatened, and stalked. Those

16 injuries, while abhorrent, cannot maintain a RICO claim. *See Oscar*, 965 F.2d at 785–87.

17 Seeking to avoid dismissal on that basis, the FAC further hypothesizes that each Plaintiff also lost

18 out on various potential financial opportunities as a result of those same personal injuries: Mr. Al-

19 Sadhan has, due to his imprisonment, been deprived of the ability to pursue graduate-level

20 education in the U.S., and/or to "explore work opportunities" in the U.S., "and, thereby, earn a

21 living," FAC ¶ 119, while Ms. Al-Sadhan has allegedly lost out on various career, educational,

22 and financial opportunities due to her choice to devote significant time and energy to advocating

23 against the KSA's abuses of her brother—a choice that, unfortunately, then triggered a campaign

24 of harassment and abuse by the KSA, which caused Ms. Al-Sadhan to allegedly forego other

25 financial and employment opportunities, *see id.* ¶¶ 172–176.

26        At bottom, the FAC attempts to recast Plaintiffs' fundamentally personal injuries as

27 "business" or "property" injuries. RICO does not allow this. "Pecuniary loss derivative of

28 emotional distress is not compensable under RICO." *Young v. Schultz*, 2023 WL 3324687, at *4

**DEFENDANT X CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**
**Case No. 3:23-cv-02369-EMC**

2358565

1    (N.D. Cal. May 8, 2023); *see also, e.g., Ainsworth v. Owenby*, 326 F. Supp. 3d 1111, 1123 (D. Or.

2    2018) ("[A] plaintiff cannot transform a fundamentally personal injury into a proprietary one by

3    expending financial resources or incurring economic losses therefrom.") (citation omitted).

4    Moreover, Plaintiffs' claimed losses are entirely speculative. *See Chaset v. Fleer/Skybox Int'l,*

5    *LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) ("Injury to mere expectancy interests or an 'intangible

6    property interest' is not sufficient to confer RICO standing."). Their alleged injuries are

7    untethered to any property interest cognizable under state law. *See Oren M. Atias v. Michael S.*

8    *Phillips*, 2018 WL 11355475, at *4 (C.D. Cal. Dec. 7, 2018) (rejecting RICO claim premised on

9    the loss of future business opportunities because plaintiffs failed to allege that "Defendant's

10   conduct interfered with existing economic relationships from which Plaintiffs could readily

11   expect to derive benefit," as would be required to state a property interest under California law).

12                      (ii)       **Plaintiffs fail to allege a domestic injury.**

13           Plaintiffs also fail to allege facts establishing a "*domestic* injury to business or property,"

14   which RICO requires because it does not apply extraterritorially. *RJR Nabisco*, 579 U.S. at 354.

15   "[D]etermining whether a plaintiff has alleged a domestic injury is a context-specific inquiry that

16   turns largely on the particular facts alleged in a complaint." *Yegiazaryan v. Smagin*, 599 U.S.

17   533, 544 (2023) (adopting the Ninth Circuit's "context-specific" test). As such, "courts should

18   look to the circumstances surrounding the alleged injury to assess whether it arose in the United

19   States," including "the nature of the alleged injury, the racketeering activity that directly caused it,

20   and the injurious aims and effects of that activity." *Id.*

21           Applying that standard here, Plaintiffs allege only foreign injuries. The district court's

22   application of the "context-specific" test in *Doe v. Tapang* is instructive. *See* 2019 WL 3576995

23   (N.D. Cal. Aug. 6, 2019). In *Tapang*, the plaintiff brought a RICO claim against a U.S. resident

24   and others, alleging that the U.S. resident aided and abetted fighters in Cameroon who killed his

25   family members in Cameroon. *Id.* at *1–*2. The district court held that the plaintiffs had failed

26   to allege a "domestic injury" because the alleged conduct occurred primarily in Cameroon—

27   meaning that the individuals who harmed the family member, and the family members

28   themselves, were all located in Cameroon. *Id.* at * 7. Likewise, here, Mr. Al-Sadhan alleges that

2358565

1   his injuries were suffered in Saudi Arabia and at the hands of individuals located in and directed

2   by the KSA, a foreign sovereign; this includes being kidnapped in 2018; being tortured; and

3   ultimately being subject to a "sham trial" and extended incarceration. FAC ¶¶ 112–118, 155–

4   164. The only conduct alleged to have occurred in the United States is Abouammo and

5   Alzabarah's theft of data, which was directed by the KSA from Saudi Arabia for transmission to

6   Saudi Arabia, *id.* ¶¶ 54–73, and—as is discussed above in Sections III.A–B—is not even the

7   proximate cause of Mr. Al-Sadhan's alleged injuries. *See Tapang*, 2019 WL 3576995 at *6–*7

8   (finding no "domestic injury" where U.S. resident who allegedly aided and abetted foreign

9   misconduct was not alleged to be proximate cause of that conduct).

10       This analysis is not changed by the FAC's new allegation that, because the KSA imposed

11   20 years of imprisonment followed by a 20-year travel ban on Mr. Al-Sadhan, Mr. Al-Sadhan is

12   unable to pursue opportunities in the United States. FAC ¶¶ 169–71. In addition to this being a

13   personal and speculative injury, as discussed in Section III.D.2.c(i) above, the "circumstances

14   surrounding the alleged injury" ground the injury in Saudia Arabia. The true nature of the alleged

15   injury is that Mr. Al-Sadhan is being imprisoned in Saudi Arabia for 20 years and forced to stay

16   in Saudi Arabia for an additional 20 years—the location of this harm in Saudi Arabia remains

17   unchanged regardless of how one may attempt to reframe it. Moreover, the alleged racketeering

18   activity was "taken in" or "directed from" Saudia Arabia, and the injurious aims and effects

19   "largely manifested in" Saudia Arabia. *See Yegiazaryan v. Smagin*, 599 U.S. 533, 546 (2023).

20       Likewise, although Ms. Al-Sadhan resides in the U.S., she alleges injuries similarly

21   directed by the KSA in Saudi Arabia and perpetrated by the KSA's Saudi-based agents. The only

22   racketeering conduct she alleges occurred in the United States was her being followed and

23   "menaced" by a KSA agent in a restaurant in Washington D.C. FAC ¶ 166. But even this latter

24   conduct she alleges was directed from Saudi Arabia, with the injurious aim being to stop her

25   activism against her brother's detention in Saudia Arabia. *See id.* Thus, any injury to Ms. Al-

26   Sadhan still "arose in" Saudia Arabia. *See Yegiazaryan*, 599 U.S. at 545–46.

27       Accordingly, because the FAC alleges overwhelmingly "foreign" rather than "domestic"

28   injuries—and because none of those injuries are to Plaintiffs' "business or property" in any

event—Plaintiffs' RICO claims should be dismissed.

> **d.** **Plaintiffs fail to plausibly allege that Twitter entered into any agreement with its purported co-conspirators.**

Plaintiffs also claim that Twitter violated § 1962(d), which makes it "unlawful for any person to conspire to violate" RICO. But this claim necessarily fails because the FAC does not state a substantive RICO claim (as explained above), and a § 1962(d) claim cannot survive where a plaintiff fails to plead a RICO violation in the first place. *See Sanford v. MemberWorks, Inc.,* 625 F.3d 550, 559 (9th Cir. 2010); *Metaxas v. Lee,* 503 F. Supp. 3d 923, 946 (N.D. Cal. 2020).

Even if Plaintiffs' RICO conspiracy claim could stand alone, it would still fail because § 1962(d) requires that Plaintiffs plead the existence of a conspiratorial agreement, and the FAC lacks any well-pleaded factual allegations plausibly alleging that Twitter entered into an agreement with its purported co-conspirators to do *anything*—much less that it agreed with them to undertake a criminal enterprise. *See Howard v. Am. Online Inc.,* 208 F.3d 741, 751 (9th Cir. 2000) ("To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses."). Conclusory allegations to this effect must be disregarded. *See, e.g.,* FAC ¶ 96(c) (claiming that Twitter had "a conspiratorial agreement with Defendant KSA"); *id.* ¶ 101 (alleging, without supporting facts, that "Defendant Twitter agreed to participate, and was fully complicit, in the leak of confidential Twitter user data"); *id.* ¶ 183 (alleging that each defendant "agreed and conspired to conduct and participate in the conduct of the affairs of the Saudi Criminal Enterprise"); *see also Gianelli v. Schoenfeld,* 2021 WL 4690724, at *11, n.15 (E.D. Cal. Oct. 7, 2021) ("It is not enough to simply parrot [RICO's] statutory language by pleading that two people 'conspired to conduct and participate in the affairs of the enterprise through a pattern of racketeering activity.'"). Because there are no well-pleaded factual allegations that Twitter entered into a qualifying agreement with its purported co-conspirators, Plaintiffs' RICO conspiracy claim must be dismissed.

> **e.** **Plaintiffs fail to plausibly allege that Twitter had the requisite knowledge of the alleged enterprise and intended to participate.**

Plaintiffs also fail to allege facts giving rise to a plausible inference that Twitter was

1    "aware of the essential nature and scope of the" alleged Saudi Criminal Enterprise "and intended

2    to participate in it," as required by § 1962(d).  *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir.

3    1993).  Just as the FAC fails to establish that Twitter and the KSA were engaged in a qualifying

4    enterprise with a common and enduring purpose, *see* Section III.D.2.b, the FAC is devoid of any

5    factual allegations plausibly suggesting that Twitter had any knowledge whatsoever of its

6    purported co-conspirators' scheme, much less that it intended to participate in it.  Instead,

7    Plaintiffs advance an outrageous and purely conclusory allegation that Twitter "knowingly," or

8    with "deliberate ignorance," "abetted KSA's efforts to identify, muzzle, and disappear dissidents,

9    including acts of murder, kidnapping, and torture."[11]  FAC ¶ 38.  That inflammatory and

10   conclusory allegation finds no support in the well-pleaded facts of the FAC.  An inference of

11   knowledge through willful blindness generally requires that the defendant "believe that there is a

12   high probability that a fact exists" and "take deliberate actions to avoid learning of that fact."

13   *Global–Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).  Yet nowhere does the FAC

14   plausibly allege that Twitter did either of these things.  To the contrary, as soon as Twitter learned

15   of Abouammo and Alzabarah's illegal conduct, it acted swiftly to stop the wrongdoing, *see* Pl.

16   Ex. 2 ¶ 26(s); *see also Abouammo*, ECF No. 1, ¶ 85, after which Twitter cooperated with the

17   government's investigation and notified affected accountholders.  *See* Twitter Employee Decl.

18   ¶¶ 2–3, Exs. 1–2.  The Court should dismiss Plaintiffs' § 1962(d) claim for this additional reason.

19           f.      **Section 230(c)(1) of the Communications Decency Act precludes
                     liability for the KSA's use of Twitter's services.**
20

21           Lastly, the FAC asserts that various John Doe defendants and other defendants (but not

22   Twitter) made threatening posts directed at Ms. Al-Sadhan using Twitter's platform.

23   FAC ¶¶ 149–150, 167.  These assertions appear irrelevant to Ms. Al-Sadhan's RICO claim

24   against Twitter.  But to the extent she contends they are a component of her RICO claim, the

25   Court must reject that contention because "Section 230 of the Communications Decency Act

26   ('CDA') immunizes providers of interactive computer services against liability arising from

27   content created by third parties."  *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265 (9th Cir. 2016)

28   ───────────────────
     [11] To the extent the FAC seeks to invoke an aiding and abetting theory here, "[s]uch a theory of
     liability is not available under RICO."  *In re Chrysler-Dodge-Jeep*, 295 F. Supp. 3d at 984.

1    (quotation marks omitted).  Section 230(c)(1) immunity applies where the defendant is "(1) a

2    provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a

3    state law cause of action, as a publisher or speaker (3) of information provided by another

4    information content provider."  *Al-Ahmed II* at *11 (citation omitted).  All three requirements are

5    present.  First, as this Court previously held, Twitter is an interactive computer service.  *Id.* at

6    *11.  The second and third prongs are satisfied because Plaintiffs' claims would seek to hold

7    Twitter liable for publishing content alleged to have been created by third parties.  Accordingly,

8    Plaintiffs cannot state a claim against Twitter based on the allegedly threatening messages posted

9    by others.

   **E.    Mr. Al-Sadhan's ATS claim fails for several additional reasons.**

10

11       In addition to his civil RICO claims, Mr. Al-Sadhan (but not Ms. Al-Sadhan) asserts a

12    claim under the ATS alleging that Twitter aided and abetted his torture.  This claim is

13    categorically false, is unsupported by any well-pleaded facts, and fails for all the reasons set forth

14    in Sections III.A–C above.  It must also be dismissed for several additional, independent reasons.

   **1.    Mr. Al-Sadhan fails to plead facts sufficient to establish that Twitter
          conspired to, or aided and abetted, his torture.**

15

16       To state an aiding and abetting ATS claim, a plaintiff must allege the requisite *mens rea*

17    and *actus reus*—*i.e.*, knowingly providing substantial assistance to an international crime with a

18    substantial effect on the perpetration of an international law violation.  *Doe I v. Cisco Sys.*, 73 F.

19    4th 700, 724 (9th Cir. 2023).  To satisfy the *actus reus* requirement, a defendant's actions must be

20    an actual cause of the international law violation.  *See Doe I v. Nestle USA, Inc.*, 766 F.3d 1013,

21    1026 (9th Cir. 2014) (emphasizing "the existence of a causal link").  The *mens rea* standard is

22    only "satisfied when a defendant acts with knowledge that the defendant's actions will assist in

23    the commission of a crime or with awareness of a substantial likelihood that the defendant's acts

24    would assist the commission of a crime."  *Cisco Sys.*, 73 F.4th at 734 (citation omitted); *see also*

25    *Brill v. Chevron Corp.*, 804 Fed. Appx. 630, 632–33 (9th Cir. 2020); *Presbyterian Church of*

26    *Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 260 (2nd Cir. 2009).  Finally, "assuming

27    [*arguendo*] that [ATS] . . . conspiracy claims are cognizable, they require proof of an agreement."

28    *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1085 n.7 (9th Cir. 2010).

2358565

1    Here, none of these elements is pleaded: there are no well-pleaded factual allegations that

2   Twitter took any action that assisted the KSA and its agents in torturing Mr. Al-Sadhan, much

3   less subject to any agreement or with the knowledge of aiding that torture.  And, even if Twitter

4   could be held responsible for the conduct of its former rogue employees (which, as explained in

5   Section III.C above, it cannot), the FAC does not allege any such theory of vicarious liability or

6   even that those individuals shared information with the KSA knowing that it would aid the torture

7   which occurred several years later.[12]  Simply put, Twitter never aided or conspired with the KSA

8   to torture Mr. Al-Sadhan, and the FAC has alleged no well-pleaded facts to the contrary.

9   Accordingly, Mr. Al-Sadhan fails to state a claim that Twitter is responsible for his alleged

10   torture, and his ATS claim should be dismissed.

> **2.     Conspiracy and criminal enterprise liability for torture have not been recognized as cognizable under the ATS.**

11
12   As noted above, the FAC's conspiracy or criminal enterprise liability theory of ATS

13   liability must be dismissed because an essential element of this claim is "proof of an agreement."

14   *Jeppesen*, 614 F.3d 1085 n.7.  Here, as in *Jeppesen*, there are no well-pleaded factual allegations

15   that Twitter assisted the KSA or entered into any agreement.  *See* Section III.D.2(d), *supra*.  But

16   this secondary liability theory must be dismissed for an additional reason: claims for conspiracy

17   or joint criminal enterprise to perpetrate torture are not cognizable under the ATS.  The ATS is

18   "open to a narrow class of international norms" and any new cause of action may form the basis

19   for an ATS claim only to the extent it is an international norm that is "specific, universal, and

20   obligatory."  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 729, 732 (2004).  But "the only

21   'conspiracy' crimes that have been recognized by international [law] . . . are conspiracy to commit

22   genocide and common plan to wage aggressive war."  *Hamdan v. Rumsfeld*, 548 U.S. 557, 610

23   (2006).  Thus, conspiracy and joint criminal enterprise theories are not generally cognizable under

24

25   ———————————
26   [12] Because the FAC does not plead vicarious liability, "the conduct of [Twitter's] employees is not pertinent to the question of the liability of [Twitter]."  *See In re XE Servs. Alien Tort Litig.*, 665 F. Supp. 2d at 590.  Moreover, vicarious liability has not been recognized as a cognizable
27   theory of liability for aiding and abetting, conspiracy, or criminal enterprise liability under the ATS.  The ATS is "open to a narrow class of international norms" and any new cause of action
28   may form the basis for an ATS claim only to the extent it is an international norm that is "specific, universal, and obligatory."  *Sosa v. Alvarez-Machain*, 542 U.S., 692, 729, 732 (2004).

DEFENDANT X CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:23-cv-02369-EMC

2358565

1   the ATS. *See Talisman Energy, Inc.*, 582 F.3d at 260.  The FAC's conspiracy and joint criminal

2   enterprise claims for torture under the ATS should therefore be dismissed with prejudice.

3           **3.**      **The FAC improperly seeks to apply the ATS extraterritorially.**

4         As with his RICO claim, Mr. Al-Sadhan's ATS claim must be dismissed also because he

5   seeks to apply it to extraterritorial conduct.  The Supreme Court has determined that, like RICO,

6   the ATS may not be applied extraterritorially. *Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931, 1936

7   (2021).  Thus, an ATS plaintiff must allege that "the conduct relevant to the statute's focus

8   occurred in the United States." *Id.*  In *Nestle*, the Supreme Court did not decide what the ATS's

9   "focus" is because it held that the complaint there impermissibly sought extraterritorial

10  application of the ATS under any standard. *Id.* at 1937.  Central to the Court's analysis was the

11  fact that "[n]early all the conduct [plaintiffs] allege[d] aided and abetted forced labor—providing

12  training, equipment, and cash to overseas farmers—. . . occurred [abroad]." *Id.*

13        As in *Nestle*, here, nearly all the alleged misconduct occurred abroad.  For example, Mr.

14  Al-Sadhan alleges that the KSA directed the theft of Twitter's confidential information from

15  Saudi Arabia, as well as its onward transmission to Saudi Arabia, and that this ultimately enabled

16  the KSA to kidnap, torture, and falsely imprison him in Saudi Arabia years after he had moved

17  back to Saudi Arabia.  FAC ¶¶ 54–73.  Likewise, he alleges that he was tortured in Saudi

18  Arabia—by agents of the KSA and at the direction of the KSA. *Id.* ¶¶ 12, 110–18, 115, 155–64.

19  As with his RICO claim, the only well-pleaded allegation to have taken place in the United States

20  is Abouammo and Alzabarah's theft of data, which was directed by the KSA from Saudi Arabia,

21  and—as discussed in Sections III.A–B above —is not even plausibly alleged to be the proximate

22  cause of Mr. Al-Sadhan's torture at the hands of the KSA. *See Tapang*, 2019 WL 3576995 at *6–

23  *7 (discounting domestic conduct for purposes of extraterritoriality analysis where the conduct

24  did not proximately cause alleged injuries).  Thus, because Mr. Al-Sadhan seeks an

25  extraterritorial application of the ATS, his claim must be dismissed with prejudice as to Twitter.

26  **IV.**    **CONCLUSION**

27        Twitter respectfully requests that the Court dismiss the FAC as against Twitter in its

28  entirety and with prejudice.

2358565

1   Dated:  September 29, 2023                          KEKER, VAN NEST & PETERS LLP

2

3                                   By:   */s/ Benjamin Berkowitz*

BENJAMIN BERKOWITZ

4                                       ANJALI SRINIVASAN

W. HAMILTON JORDAN

5                                       RYLEE KERCHER OLM

RYAN J. HAYWARD

6

7                                       Attorneys for Defendant X Corp.,
as Successor in Interest to Named
Defendant Twitter, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT X CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:23-cv-02369-EMC

2358565